JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)**  County of Residence of First Listed Plaintiff _____<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
          Plaintiff

☐ 2   U.S. Government
          Defendant

☐ 3   Federal Question
          *(U.S. Government Not a Party)*

☐ 4   Diversity
          *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury<br>☐ 362 Personal Injury -<br>  Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury  -<br>  Product Liability<br>☐ 367 Health Care/<br>  Pharmaceutical<br>  Personal Injury<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>  New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>  3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>  (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer<br>  Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>  Exchange |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>  Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>  Conditions of<br>  Confinement | **LABOR**<br>☐ 710 Fair Labor Standards<br>  Act<br>☐ 720 Labor/Management<br>  Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>  Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>  Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>  Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>  Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>  Act/Review or Appeal of<br>  Agency Decision<br>☐ 950 Constitutionality of<br>  State Statutes |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
          Proceeding

☐ 2   Removed from
          State Court

☐ 3   Remanded from
          Appellate Court

☐ 4   Reinstated or
          Reopened

☐ 5   Transferred from
          Another District
          *(specify)*

☐ 6   Multidistrict
          Litigation -
          Transfer

☐ 8   Multidistrict
          Litigation -
          Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
_____

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
  UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

DATE                                    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL STORMS, SCOTT RICKARD,
PHILLIP MULLIGAN, JAKE KROLL,

       Plaintiffs,

v.

OAKLAND COUNTY MEDICAL CONTROL
AUTHORITY, a non-profit corporation,
STEVE MCGRAW, BONNIE KINCAID, AHARON
GEDALIAH COOPER, TRESSA GARDNER,
DOCTOR DOE 1, DOCTOR DOE 2, DOCTOR
DOE 3, DOCTOR DOE 4, NURSE DOE 5,
PROVIDER DOE 6, PROVIDER DOE 7,
MICHIGAN DEPARTMENT OF HEALTH AND
HUMAN SERVICES, KATHY WAHL, EMILY
BERGQUIST, SABRINA KERR, and SCOTT MINAUDO,

       Defendants.

Case No. 2:20-cv-12457
Hon.
Mag. Judge

> **Complaint for Declaratory and Injunctive Relief**

_____

**SEWARD HENDERSON PLLC**
By: T. Joseph Seward (P35095)
    Kali M. L. Henderson (P76479)
*Attorneys for Plaintiff*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sewardhenderson.com
   khenderson@sewardhenderson.com

## COMPLAINT

PLAINTIFFS, MICHAEL STORMS, SCOTT RICKARD, PHILLIP MULLIGAN, and JAKE KROLL, by and through their attorneys, bring the following action to protect their constitutional rights. In support of this action, Plaintiffs state:

1.     This is a Complaint for Injunctive Relief and Declaratory Judgment to preclude the Michigan Department of Health and Human Services and Oakland County Medical Control Authority from further depriving the Plaintiffs of their fundamental property interests in their professional licenses, employment, and careers after irreparably violating their constitutional rights to due process.

## PARTIES & JURISDICTION

2.     Plaintiff Michael Storms ("Storms") is employed by the City of Southfield as a Paramedic and Firefighter.

3.     Storms holds two licenses from the State of Michigan relative to his employment: a paramedic license and an Emergency Medical Technician ("EMT") license.

4.     Plaintiff Scott Rickard ("Rickard") is also employed by the City of Southfield as a Paramedic and Firefighter.

5.      Rickard also holds two licenses from the State of Michigan relative to his employment: a paramedic license and an EMT license.

6.      Plaintiff Phillip Mulligan ("Mulligan") is employed by the City of Southfield as an EMT and Firefighter.

7.      Mulligan holds an EMT license from the State of Michigan relative to his employment.

8.      Plaintiff Jake Kroll ("Kroll") is employed by the City of Southfield as an EMT and Firefighter.

9.      Kroll holds an EMT license from the State of Michigan relative to his employment.

10.      Defendant, Oakland County Medical Control Authority (the "OCMCA"), is a nonprofit corporation organized under the laws of the State of Michigan and rules promogulated by the Department of Health and Human Services.

11.      The OCMCA oversees emergency medical services throughout Oakland County, Michigan, as prescribed in the Emergency Medical Services Act (the "EMSA"), Mich. Comp. Laws 333.20901-333.20979.

12.      Defendant, Steve McGraw, D.O., is the medical director of the OCMCA, as defined by Mich. Comp. Laws 333.20906(7) and other relevant

statutory provisions and regulations that define his role. He is also a member of the OCMCA's Professional Standards Review Organization ("PSRO").

13.     Defendant Bonnie Kincaid is the Executive Director of the OCMCA. She is also a member of the OCMCA's PSRO.

14.     Defendant Aharon Gedaliah Cooper, M.D., is the Deputy (Alternative) Medical Director of the OCMCA. He is also a member of the OCMCA PSRO.

15.     Defendant Tressa Gardner is the chairperson of the OCMCA PSRO.

16.     Defendant Doctor Doe 1 is a member of the PSRO per the OCMCA protocol 8.27(II)(D).

17.     Defendant Doctor Doe 2 is a member of the PSRO per the OCMCA protocol 8.27(II)(D).

18.     Defendant Doctor Doe 3 is a member of the PSRO per the OCMCA protocol 8.27(II)(D).

19.     Defendant Doctor Doe 4 is a member of the PSRO per the OCMCA protocol 8.27(II)(D).

20.     Defendant Nurse Doe 5 is a member of the PSRO per the OCMCA protocol 8.27(II)(D).

21.     Defendant Provider Doe 6 is a member of the PSRO per the OCMCA protocol 8.27(II)(D).

22.     Defendant Provider Doe 7 is a member of the PSRO per the OCMCA protocol 8.27(II)(D).

23.     From herein Defendants OCMCA, McGraw, Kincaid, Cooper, Gardner, and Doe 1-7 are often referred to as the "OCMCA Defendants."

24.     Defendant Michigan Department of Health and Human Services ("MDHHS") is a branch of the government of the State of Michigan that operates throughout the state and oversees the licensing of Paramedics and EMTs.

25.     Defendant Kathy Wahl is an employee of MDHHS. She serves as the Director of the Bureau of EMS, Trauma and Preparedness (the "EMS Bureau").

26.     Defendant Emily Bergquist is an employee of MDHHS and serves as MCA Coordinator within Ms. Wahl's EMS Bureau.

27.     Defendant Sabrina Kerr is an employee of MDHHS and serves as EMS Section Manager within Ms. Wahl's EMS Bureau.

28.     Defendant Scott Minaudo is an employee of MDHHS and serves as Compliance Coordinator within Ms. Wahl's EMS Bureau.

29.     From herein Defendants MDHHS, Wahl, Bergquist, Kerr, and Minaudo are often referred to as the "MDHHS Defendants."

30.     Under the EMSA, MDHHS is responsible for licensing emergency medical services personnel, and approval of protocols for emergency medical services. Mich. Comp. Laws 333.20908(9), 20910(d)(i), and 20950.

31.     All four Plaintiffs have obtained licenses from MDHHS to provide emergency medical services.

32.     The EMSA provides procedures MDHHS must follow to suspend or revoke a license it issued. Mich. Comp. Laws 333.2958.

33.     The EMSA also provides the grounds upon which MDHHS can ultimately suspend a license in Mich. Comp. Laws 333.20958(1)(a)-(h).

34.     MDHHS has developed and implemented rules to accompany the EMSA, administrative rules 325.22101-324.22217 ("the Rules"). These rules provide a process for MDHHS to suspend the activities of a life support agency (R. 325.22124), and a process for Medical Control Authorities to suspend individuals (R. 325.22126, 325.22210). The rules even provide a process for MDHHS to suspend Medical Control Authorities (R. 325.22203).

35.     The Rules do not provide a provide a process for MDHHS to suspend the license of an individual. Under the Rules promulgated by MDHHS, MDHHS can only review the appeal of a Medical Control Authority's suspension of an individual (R. 325.22126(5)).

36.     Medical Control Authorities, typically assigned by county, develop protocols for patient care and other procedures for emergency care providers under their control.

37.     The OCMCA develops, adopts, implements, and oversees protocols and procedures for emergency medical services within Oakland County. It also has the authority to enforce compliance with its protocols by issuing discipline to licensed emergency medicine providers, including paramedics and EMTs.

38.     The OCMCA has adopted several protocols suggested by the State of Michigan that govern investigations into licensee conduct, due process, and discipline.

39.     These protocols require that the OCMCA take certain actions when investigation complaints or events, and before, or when, disciplining, suspending, or revoking licenses of the providers in its county.

40.    The Defendants violated these procedures when they took actions to suspend the licenses of the four Plaintiffs, depriving them of due process and committing an illegal taking.

41.    Plaintiffs bring claims for violations of their 5th and 14th Amendment rights through 42 U.S.C. § 1983.

42.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

43.    At all relevant times, all Defendants were acting under the color of state law.

## FACTUAL BACKGROUND

44.    On Sunday, August 23, 2020, all four Plaintiffs were on duty in their roles as EMTs and paramedics for the City of Southfield Fire Department when they were dispatched to respond to an unresponsive female (hereinafter referred to as "the Call").

45.    The four provided emergency care but the patient was pronounced deceased by a doctor at Providence Hospital Southfield when Plaintiff Storms telephoned the hospital to report that the patient had been unresponsive for at least 30 minutes.

46.    The patient was transported to a funeral home where it was later discovered that she was still alive.

47. Upon information and belief, MDHHS and the individuals employed by MDHHS, exerted pressure on the OCMCA to act swiftly because MDHHS had already decided that it was going to take action against the Plaintiffs.

48. Upon information and belief, as early as Monday, August 24, 2020, the MDHHS defendants intent to suspend all Plaintiffs was communicated to the OCMCA and the OCMCA was urged to hurry up and take action to support the MDHHS defendants' decision.

49. On Tuesday August 25, 2020, the Plaintiffs were informed that they would have a meeting with the OCMCA PSRO. They were told, by their employer, that they would be allowed to talk about what took place on the scene of the Call and be asked questions.

50. On Wednesday, August 26, 2020, the OCMCA sent a letter to the Plaintiffs' employer, that stated that the MDHHS had "taken action to evoke" an emergency suspension for Plaintiffs Storms and Rickard, and had issued an "intent to suspend" (or "ITS") to Plaintiffs Mulligan and Kroll.

51. This letter also stated that the PSRO meeting was moved to the next day, less than 18 hours later.

52.     This letter did not provide any further information; it did not include the basis for these actions, information about any complaint received by the OCMCA, or information about a hearing or appeal process.

53.     Plaintiffs, via their employer, asked Defendant Kincaid to move the meeting to Friday but were told that the meeting could not be moved.

54.     Defendant Kincaid urged Plaintiffs to attend and 'get it over with' despite the request to move the meeting.

55.     In the days following the Call, the Southfield Fire Department was asked to compile and share records about the Call with the OCMCA and MDHHS. The last of these records, a data file from the EKG monitor utilized to treat the patient, that requires proprietary software to view, was provided late in the evening on August 26th. The OCMCA and PSRO did not possess the necessary software to view this file in advance of the PSRO meeting.

56.     On Thursday, August 27, 2020, at 9:30 AM, Plaintiffs attended the PSRO meeting, without counsel or union representation, where they were each asked to explain what occurred and asked various questions.

57.     At approximately 10:24 AM, the Michigan Office of Administrative Hearings issued two notices of hearings: one for Plaintiff Rickard and one for Plaintiff Storms. The notices set hearings for September

8, 2020, at 9:00 AM and 1:30 PM, respectively. The notices stated that the "Issue" to be addressed was whether proper action was taken by MDHHS.

58.    These notices were emailed to individuals at the Attorney General's Office and to Defendant Minaudo and Plaintiffs Rickard and Storms.

59.    These notices reflect that MDHHS had scheduled a formal hearing on actions that had not yet been taken.

60.    Later that same afternoon, at approximately 3:20 PM, the OCMCA issued four letters, one to each Plaintiff. These letters were emailed to Plaintiffs' employer by Defendant Kincaid.

61.    The letters to Plaintiffs Kroll and Mulligan stated that their "participation in this incident investigation has concluded." It further read that no action would be taken against their EMS licenses and that they were required to complete "an entire AHA BLS for Healthcare Providers course." Lastly, the letter stated that the Southfield Fire Department "must create and administer education that provides a thorough review of all applicable protocols." These letters were signed by Defendant Cooper. An image of the text of this letter is included below.

> Thank you for taking the time to attend the OCMCA PSRO Committee meeting to discuss the most recent events and details related to incident 082420.
>
> After careful consideration, the OCMCA PSRO Committee has determined that your participation in this incident investigation has concluded. Although no action further action will be taken by the OCMCA against you or your EMS license, we are requiring you to complete an entire AHA BLS for Healthcare Providers course. In addition, your LSA must create and administer education that provides a thorough review of all applicable protocols.
>
> Please feel free to contact the OCMCA regarding any questions or concerns.

62.     Plaintiffs Rickard and Storms each received a letter that stated he would receive a suspension, term of probation, and would be required to go through certain re-education programs. It informed him that he could appeal this decision and told him to "please see protocol 8.27.2 Disciplinary Action Appeal." These letters were also signed by Defendant Cooper.

63.     The four letters from the OCMCA never outlined the reasons why Plaintiffs had been investigated, or the issues with Plaintiffs' conduct for which they were being disciplined. The letters merely stated the resulting discipline.

64.     27 minutes later, Defendant Minaudo emailed Plaintiffs Storms and Rickard emergency orders suspending their licenses. The orders made numerous allegations, some of which appear to be based on hearsay, information not made available to Plaintiffs, and inaccurate information. The notice of hearing sent out that morning was also included in the emails.

65.    The next morning, Plaintiffs Kroll and Mulligan received the Notices of Intent that would automatically suspend them if not contested within 30 days.

### PROCESS OWED AND IRREVOCABLY STOLEN

66.    The EMSA requires that certain processes be followed before an individual's license can be suspended. MDHHS has enacted rules and approved protocols that align with the EMSA and further designate authority to Medical Control Authorities.

67.    OCMCA protocols also entitle emergency medical services providers to certain processes when involved in investigations and before any action is taken against their licenses.

68.    The OCMCA has a duty to engage in a process that ensures that licensees maintain an appropriate level of clinical and operational performance, per OCMCA Protocol 8.27.3.

69.    Under OCMCA protocols, which have been approved by, if not created by, the MDHHS, there is a protocol that governs the investigation of complaints, Protocol 8.27.1.

70.    Per Protocol 8.27.1, a complaint will trigger an investigation when received directly from the complainant, either in writing or verbally.

71.     Some complaints are considered sentinel events when they satisfy certain criteria, generally indicating a more serious complaint. Sentinel events are defined in Protocol 8.27.1 and 8.27.5.

72.     The complainant must provide the OCMCA with their name, address, and telephone number. They may also request to remain anonymous.

73.     If the OCMCA determines the complaint requires disciplinary action or formal inquiry, a formal notification must be sent to the licensee. Licensees then may request a copy of the initial complaint or a summary of it.

74.     The OCMCA did not send a formal notification to any of the Plaintiffs that a complaint was received and an investigation would be undertaken.

75.     If a complaint indicates that the licensee presents "an immediate threat to the public health, safety, or welfare," then the OCMCA may suspend a licensee immediately.

76.     The OCMCA **did not** issue any immediate suspensions here. Instead, they elected to investigate and hold an undefined PSRO meeting.

77. The OCMCA protocols provide for two different investigation processes: one for regular complaints, and one for sentinel event complaints.

78. In a sentinel event review, a special meeting will be held and the following procedures are required by protocol:

   a. Before the special meeting, the licensee "shall be provided with copies of all documentation gathered…" and will also be told whether any information was withheld or summarized.

   b. The licensee is permitted to request an adjournment of up to 30 days.

   c. The licensee can submit materials to support his/her position at least one week prior to the meeting.

   d. The licensee can request special permission to be represented by an attorney or union representative at the meeting.

   e. At the meeting, the violation of policy or protocol must be defined; the impact on the patient outcome must be evaluated; and the licensee must be given time to speak on the issue of the complaint and present supporting documentation before any responsive disciplinary action is considered.

79.     Protocol 8.27.3, titled "Due Process and Disciplinary Procedures," provides certain processes that it states must be followed in both regular and sentinel event reviews. Those processes include:

a.  The OCMCA must provide "*at least* 4 business days' notice" to the licensee before holding a special PSRO meeting.

b.  The licensee "will be provided with copies of all, complaint/investigation related materials at the time of the special meeting" and the licensee may request these materials before the meeting;

c.  The licensee may request a postponement of up to 30 days "in order to prepare his/her response to the complaint."

d.  The licensee can submit materials in support of their response to the complaint and it must be submitted at least one week before the meeting.

80.     A special meeting was held by the OCMCA PSRO, but it is unknown whether it was to investigate a regular complaint or a sentinel event complaint.

81.     This more generic complaint review protocol (8.27.3) also states that licensees may **not** be represented by counsel or a union representative during the meeting.

82.     Under both protocols (8.27.1 and 2), if after a special meeting, the PSRO decides to take disciplinary action, the licensee must be given any required remediation steps/action and **<u>a copy</u>** of the Disciplinary Action Appeal Policy.

83.     When issuing discipline, a written letter called an Order of Disciplinary Action ("ODA") must be sent. It must "clearly and plainly" identify the findings of the MCA, any disciplinary action, and any required remediation.

84.     An ODA that includes a suspension must go further. It must include:

     a.  Details of the substandard performance;

     b.  The violations of protocol and/or policy;

     c.  The term of the suspension;

     d.  The remedial activity, if applicable; and,

     e.  The time allowed for the completion of the remedial activity.

85.     Under state statute, MDHHS can suspend an emergency services provider's license directly upon a finding that a licensee meets one or more of eight different circumstances.

86.     To suspend a license, MDHHS must provide a written notice of intent to suspend ("NOI") by either certified mail or personal service. Mich. Comp. Laws 333.20958.

87.     The NOI must:

    a.  Set forth the particular reasons for the suspension;

    b.  Advise the licensee of an opportunity for a hearing before the director; and,

    c.  Inform the licensee they must advise of their desire for a hearing in writing within 30 days.

88.     The Emergency Orders issued by MDHHS state that MDHHS relies on the Administrative Procedures Act ("APA"), Mich. Comp. Laws 24.201-24.328, to issue summary suspensions.

89.     This provision of the APA has not been formally adopted by MDHHS or the legislature for application to those governed by the EMSA. The legislature specifically adopted only a portion of the APA in the EMSA

for suspensions, see Mich. Comp. Laws 333.20958. The EMSA dictates that the APA will govern hearings *after* NOIs have been issued.

90.     The EMSA does not provide for adoption of the APA summary suspension provision. Instead, it outlines a suspension provision requiring NOIs and then adopts the APA provisions to govern hearings.

91.     MDHHS has further delegated any authority for summary suspensions that it may have to Medical Control Authorities via its own rule making process.

92.     None of the above outlined processes were followed by any of the named Defendants. As a result, Plaintiffs have been unconstitutionally deprived of their property interest in their employment.

93.     This deprivation has resulted in an irreparable loss of due process that cannot be corrected and has forever damaged the Plaintiffs' right to a fair and proper adjudication of the complaints against them.

94.     Instead of following these processes, the MDHHS defendants made a decision, communicated it only to the OCMCA and pressed the OCMCA to provide it with grounds for the decision it had already made.

95.    The OCMCA then swiftly moved through its own process to clear the way for MDHHS to suspend the Plaintiffs. The OCMCA, in its haste, violated several of its own due process safeguards.

96.    MDHHS now, as stated in the Emergency Orders of Suspension and NOIs, intends to suspend the Plaintiffs based on violations of OCMCA protocols – **violations that were never found, outlined, or sustained by the OCMCA**.

### COUNT I – DUE PROCESS VIOLATIONS
### ALL DEFENDANTS

97.    Plaintiffs incorporate and rely on the above allegations as if stated herein.

98.    Plaintiffs have a constitutionally protected property interest in their emergency medical services licenses, employment, and livelihoods.

99.    MDHHS Defendants and OCMCA worked in conjunction to violate Plaintiff's substantive and procedural due process rights guaranteed by the Fourteenth Amendment in relation to the above addressed property interests.

100.    The rapid release of information and violations of protocol demonstrate that the MDHHS Defendants have worked with the OCMCA

Defendants to reach a predetermined conclusion as to the actions of each Plaintiff and the discipline each will incur, regardless of any process or response.

101.   The OCMCA has adopted protocols that outline procedures it must conform to when investigating complaints to ensure licensees are entitled to due process, including those found in Protocols 8.27.1-.5. These protocols were developed by MDHHS and adopted by the OCMCA.

102.   The OCMCA violated those protocols by forcing Plaintiffs to appear for an undefined PSRO meeting on Thursday, August 27, 2020, without the required notice, during which they had to make statements and answer questions against their interests. This appearance deprived Plaintiffs of the opportunity to avail themselves of the processes available to them, such as the ability to present an informed response supported by evidence or request the presence of an attorney or union representative.

103.   The Plaintiffs had to attend the OCMCA PSRO hearing or face another violation per OCMCA Protocol 8.27.3(I)(L).

104.   The Plaintiffs, through their employer who had exchanged all prior communications with the OCMCA, requested that the hearing move

to a different, later date, but were told that was not possible and were strongly encouraged by Defendant Kincaid to attend the Thursday hearing.

105.   The Plaintiffs due process rights were irreparably violated when they appeared and testified before the OCMCA's PSRO as MDHHS now contends that its suspensions are premised on violations of OCMCA protocols.

106.  MDHHS does not have the authority issue summary suspensions. MDHHS reliance on the APA is improper because the EMSA is the more specific statute that conflicts with and overrules the APA, as acknowledged by the language of the EMSA that specifies which, if any, procedures of the APA will apply under the EMSA.

107.   MDHHS suspensions must be grounded in one of the eight enumerated reasons in Section 20958 of the EMSA. Those reasons are that an applicant meets one of the following conditions:

    a.  Is guilty of fraud or deceit in procuring or attempting to procure licensure.

    b.  Has illegally obtained, possessed, used, or distributed drugs.

    c.  Has practiced after his or her license has expired or has been suspended.

    d. Has knowingly violated, or aided or abetted others in the violation of, this part or rules promulgated under this part.

    e. Is not performing in a manner consistent with his or her education, licensure, or approved medical control authority protocols.

    f. Is physically or mentally incapable of performing his or her prescribed duties.

    g. Has been convicted of a criminal offense under sections 520a to 520l of the Michigan penal code, 1931 PA 328, MCL 750.520a to 750.520l.

    h. Has been convicted of a misdemeanor or felony reasonably related to and adversely affecting the ability to practice in a safe and competent manner. A certified copy of the court record is conclusive evidence of the conviction.

108. The only subsections applicable to Plaintiffs upon which MDHHS can sustain their suspensions are (d) and (e).

109. Subsections (d) and (e) are reliant upon a finding of the relevant Medical Control Authority that their protocols were violated because the MDHHS does not exercise medical control over individuals or have its own

protocols – the EMSA delegates that role to MCAs such as the OCMA. See Mich. Comp. Laws 333.20906(5), (6), 333.20908(9), 333.20918, 333.20919.

110.   Defendant Wahl confirmed that protocol violations are the basis for MDHHS' actions when she signed the Emergency Orders suspending Plaintiffs Storms and Rickard that each stated they were alleged to have violated five and four different OCMCA protocols, respectively.

111.   Defendant Wahl also confirmed that this the OCMCA PSRO "hearing" was truly just a sham hearing to give the pretense of due process despite a predetermined outcome when a Notice of Hearing on the MDHHS suspensions was issued *before the OCMCA issued its decisions* and *before the Emergency Orders of suspension were issued.* The following outlines the improper issuance of notifications:

a.   At 10:24 AM the Notices of Hearing, only, were sent to Plaintiffs Rickard and Storms.

b.   At 3:20 PM the OCMCA issued its decisions to suspend, excluding any reason for these decisions.

c.   At 3:47 PM, Defendant Minaudo sent out the Emergency Orders and accompanying Notices of Hearing that were previously sent;

the Emergency Orders contained a very detailed list of "allegations" to support the stated 4 or 5 protocol violations.

112. The OCMCA has not even issued the reasons for its suspension; it has not outlined any protocol violations. Yet, somehow, Defendant Wahl has overstepped the MCA investigation and disciplinary process and found violations of the OCMCA's protocols.

113. Further support for this predetermination is found in the fact that the OCMCA communicated MDHHS' decision to suspend and issue notices of intent as early as Monday, August 24, 2020, four days before they were issued.

114. In summary, the OCMCA Defendants violated their own procedures by:

   a. Not providing notification of a complaint to Plaintiffs, Protocol 8.27.1(VII);

   b. Not stating the type of investigation at hand (a sentinel event investigation vs. a formal investigation of a regular complaint), 8.27.1(VII);

   c. Not providing at least four business days notice before conducting a special meeting, Protocol 8.27.1(I);

d. Not following the appropriate procedures if they were conducting a sentinel event review (not providing investigation materials, not conducting the hearing in the outlined fashion), Protocol 8.27.1(X);

e. Not outlining their findings and instead merely issuing discipline and ordering remedial actions in violation of Protocol 8.27.3;

f. Not providing copies of the Disciplinary Action Appeal Policy with the issuance of discipline.

115.  The above outlined violations demonstrate not only irreparable procedural violations, but a larger and thoughtless intention of the OCMCA Defendants to act swiftly to provide pretense to the predetermined disciplinary outcome. These actions deprived Plaintiffs of a fair, impartial hearing and this deprivation cannot be corrected – the metaphorical bell could not be un-rung once the MDHHS Defendants made their initial decision and Defendants were forced to testify at the PSRO hearing.

116.  Defendants further set the stage for an unconstitutional hearing when the MDHHS made a decision and asked its subordinate to rubber stamp its decision through a sham PSRO process.

117.   Plaintiffs' reputations and careers have been irreparably damaged by these actions, especially in light of the significant international media attention this case has garnered, and no corrective action or process can fix the damage caused by these violations.

118.   Plaintiffs will continue to suffer if this process is allowed to move forward, with the violations only compounding the damage to their careers.

119.   The public interest is best served by barring the Defendants from proceeding with their unconstitutional hearings and discipline determinations as permitting such violations allows Defendants and others like them to wrongfully impact not only the lives of Plaintiffs and other medical providers, but also the public who relies on emergency medical providers for care. Such disruptions to the emergency medical care system should be avoided.

**BASED ON THE FOREGOING** Plaintiffs respectfully request that this Court enter a preliminary and Permanent Injunction enjoying Defendants from taking any further action against Plaintiffs arising out of the Call and ordering them to revoke the suspensions and notices already issued. Plaintiffs also request that the Court enter a Declaratory Judgment that Defendants actions violated Plaintiffs rights to due process as established

under the Fourteenth Amendment. Plaintiffs also request that the Court order Defendants to pay their costs and attorney fees so wrongfully incurred consistent with 42 U.S.C. 1988.

### COUNT II – DEPRIVATION OF PROPERTY WITHOUT COMPENSATION ALL DEFENDANTS

120.   Plaintiffs incorporate and rely on the above allegations as if stated herein.

121.   At all relevant times, Plaintiffs had a vested property interest in their licenses and ability to operate under them to provide emergency services.

122.   Plaintiffs' property interest is protected by the Fifth Amendment.

123.   Defendants unconstitutional conduct, as described more fully in all preceding paragraphs, deprived Plaintiffs of this property interest without just compensation or proper procedural proceedings.

**BASED ON THE FOREGOING** Plaintiffs respectfully request that this Court enter a Preliminary and Permanent Injunction enjoying Defendants from taking any further action against Plaintiffs that would constitute a further taking without just compensation, order that the licenses be

reinstated immediately, and further find that in a Declaratory Judgment, as set forth in all preceding allegations, Defendants have unconstitutionally taken, without just compensation, Plaintiffs' property interests. Plaintiffs also request that the Court order Defendants to pay their costs and attorney fees so wrongfully incurred consistent with 42 U.S.C. 1988.

Respectfully submitted,

SEWARD HENDERSON PLLC
/s/Kali M.L. Henderson (P76479)
*Attorneys for Plaintiff*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: khenderson@sewardhenderson.com

Dated:  September 8, 2020

## PROOF OF SERVICE

I hereby certify that on **Tuesday, September 8, 2020**, I electronically filed the foregoing document utilizing the ECF system.

/s/ Fatten Saad
SEWARD HENDERSON PLLC
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
E: fsaad@sewardhenderson.com